UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SYRUP ASSOCIATES, INC. and BARN REDEVELOPMENT ASSOCIATES, INC.,<br><br>                              Plaintiffs,<br><br>                    -v-<br><br>COASTAL DEVELOPMENT MASSACHUSETTS, LLC, RICHARD T. FIELDS, and STERLING RACECOURSE, INC.,<br><br>                              Defendants. | 18-CV-8133 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiffs Syrup Associates, Inc. ("Syrup") and Barn Redevelopment Associates, Inc. ("Barn") (collectively, "Plaintiffs") brought this contract action against Defendants Coastal Development Massachusetts, LLC ("Coastal"), Richard T. Fields, and Sterling Racecourse, Inc. ("Sterling") (collectively, "Defendants"), invoking this Court's diversity jurisdiction. Although discovery has not yet begun, Plaintiffs have moved for summary judgment against Defendants. (Dkt. No. 20.) Defendants, meanwhile, seek to dismiss this action for lack of subject-matter jurisdiction. (Dkt. No. 35.) For the reasons that follow, Defendants' motion to dismiss is denied, and Plaintiffs' motion for summary judgment is granted in part and denied in part.

I.      **Background**

Syrup and Barn are Nevada corporations with their principal places of business in Connecticut. (Dkt. No. 30 ("FAC") ¶¶ 2–3.) Coastal is a Delaware limited liability company ("LLC"), whose members, at the time this action was filed, were domiciled in Wyoming and Delaware. (FAC ¶ 4.) Fields, too, was domiciled in Wyoming at the time this action was filed.

(FAC ¶ 5.)  And Sterling is a Massachusetts corporation with its principal place of business in New York.  (FAC ¶ 6.)

On June 2, 2014, Syrup and Defendants entered into an agreement (the "Syrup Agreement") under which Coastal granted Syrup a put option to sell certain conditional payment rights ("CPRs"), at Syrup's election, to Coastal, with Fields and Sterling (the "Guarantors") guaranteeing Coastal's payment obligation.  (Dkt. No. 38 ("SUF") ¶ 1.)  The put option's exercise price started at $2.5 million and would increase at a rate of 25% per annum from the date of the Syrup Agreement through the date of the closing of the exercise of the put option. (*Id.*)  On June 10, 2014, Barn entered into an agreement (the "Barn Agreement") (collectively with the Syrup Agreement, "the Agreements") with Defendants on the same terms as the Syrup Agreement, except that the put option's exercise price started at $3.0 million.  (SUF ¶ 2.)

In 2015, Syrup and Barn exercised their put options under the Agreements, triggering Coastal's buyback obligation.  (SUF ¶¶ 3–4.)  On or around January 11, 2016, Plaintiffs and Defendants, together with others, entered into a note purchase and sale agreement (the "2016 Agreement"), which acknowledged that Plaintiffs' "put options were validly and timely exercised, and the amounts owed as a result of the timely exercise of such options are the true and correct amounts of such obligations, due and owing as of the date hereof without defense or offset of any kind."  (SUF ¶ 6.)  In addition, a schedule attached to the 2016 Agreement set out that Coastal owed Syrup $3,524,305.56, and Barn $4,208,333.33, as a result of Plaintiffs' exercise of their put options.  (SUF ¶ 8.)  Plaintiffs allege that they have never been paid by either Coastal or the Guarantors, and that interest on their outstanding claims continues to accrue at a rate of 25% per annum, whereas Defendants allege that they have made payments of over

$37 million to a creditor group that includes Plaintiffs, and that those payments might have satisfied Plaintiffs' claims in part or in full.  (SUF ¶¶ 9–11.)

On September 6, 2018, Plaintiffs filed the instant action against Defendants for breach of contract.  (Dkt. No. 1.)  On October 11, 2018, Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction.  (Dkt. No. 12.)  After Plaintiffs responded by amending their complaint (Dkt. No. 30), Defendants filed another motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 35).[1]  In addition, Plaintiffs filed a motion for summary judgment before any discovery had been conducted.  (Dkt. No. 20.)  The briefing for the motion to dismiss and the motion for summary judgment is complete (Dkt. Nos. 22, 37, 41, 42, 44, 46), and the motions are ripe for resolution.

## II.  Legal Standards

A district court must dismiss a claim for lack of subject-matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(b)(1).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.*  In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings.  *See id.*

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is

---

[1] As a result of these developments, Defendants' initial motion to dismiss, filed at Docket Number 12, is denied as moot.

genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party.  *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense."  *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence."  *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014).  The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (second quoting *Lund's, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).

In addition, summary judgment is rarely "granted against a [non-movant] who has not been afforded the opportunity to conduct discovery."  *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).  "The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment."  *Id.* (quoting *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)) (internal quotation marks omitted).

## III.    Discussion

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

It is well established that the Court must evaluate the "challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing."  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).  Here, it is

undisputed that every Plaintiff was diverse from every Defendant at the time of filing.  (FAC ¶¶ 2–7; *see generally* Dkt. No. 37.)  At the time this action was filed, Plaintiffs were both Nevada corporations with their principal places of business in Connecticut, whereas Defendants were citizens of Wyoming, Delaware, Massachusetts, and New York.  (FAC ¶¶ 2–6.)  Because the amount in controversy exceeds $75,000, Plaintiffs have satisfied the minimum requirements for diversity jurisdiction under 28 U.S.C. § 1332.

Defendants, however, seek to dismiss this action under 28 U.S.C. § 1359, arguing that the diversity of parties was improperly manufactured by Plaintiffs through converting themselves from Delaware LLCs to Nevada corporations right before filing this action.  (Dkt. No. 37 at 1–2.)  Defendants contend that Plaintiffs' conversions should be disregarded for purposes of determining jurisdiction, and that if the Court allows Plaintiffs' pre-conversion citizenships to govern, Plaintiffs are not completely diverse from Defendants.  (Dkt. No. 37 at 8–9.)  In opposition, Plaintiffs argue that § 1359 is inapplicable to this action and that even if it is, their conversions do not violate § 1359 because Plaintiffs had "legitimate business purpose[s]" for effectuating the conversions.  In addition, Plaintiffs contend that even if the Court gives effect to their pre-conversion citizenships, they would still be diverse from Defendants.  (Dkt. No. 44 at 2.)

The threshold question, then, is whether § 1359 requires the Court to disregard Plaintiffs' conversions from Delaware LLCs to Nevada corporations.  And the Court answers this question in the negative.

Section 1359 of 28 U.S.C. states:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

28 U.S.C. § 1359.

In applying § 1359, the Second Circuit has created a presumption of collusion for certain transactions, such as claim assignments from a nondiverse parent company to a wholly owned diverse subsidiary, *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475–76 (2d Cir. 1976), or claim assignments from corporate shareholders to the company they control, particularly where there is overlap between the leadership of the shareholders and the leadership of the company, *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 863 (2d Cir. 1995). In order to rebut the presumption of collusion, the party asserting diversity jurisdiction must demonstrate legitimate business reasons independent from invoking federal jurisdiction for the transaction. *Id.*

The parties disagree as to whether the presumption of collusion is applicable to the instant case, and whether Plaintiffs have advanced legitimate business reasons for their conversions. The Court need not address the first question because Plaintiffs' alleged business reasons are sufficient to rebut the presumption of collusion, even assuming that the presumption applies.

Plaintiffs claim that their conversions were aimed at "reap[ing] significant savings from the new tax code, while maintaining important protections against judgment creditors." (Dkt. No. 44 at 15.) Specifically, because the newly passed Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, 131 Stat. 2054, greatly reduced the income tax rates applicable to C corporations, Plaintiffs converted from LLCs to C corporations in order to take advantage of the lower income tax rate. (Dkt. No. 44 at 5–6.) At the same time, however, converting to a Delaware C corporation would have caused Plaintiffs to lose a protection that Delaware law affords to Delaware LLCs: "a charging order, which prevents judgment creditors from seizing membership interests." (Dkt. No. 44 at 7.) Because Defendant Fields, a potential judgment creditor, had

allegedly threatened to seize control over Plaintiffs, Plaintiffs sought to reincorporate in Nevada, where the protection of a charging order is available to C corporations.  (Dkt. No. 44 at 6–7.)

In this Circuit, courts often recognize a "saving in taxes" as a legitimate business reason sufficient to rebut the presumption of collusion.  *Prudential Oil Corp.*, 546 F.2d at 477; *see Mother Bertha Music, Inc. v. Trio Music Co.*, 717 F. Supp. 157, 159–60 (S.D.N.Y. 1989) (holding that tax planning is a sufficient business reason to rebut the presumption of collusion at the motion to dismiss stage); *see also New Line Int'l Releasing, Inc. v. Marty Toy (USA), Inc.*, No. 91 Civ. 8638, 1993 WL 36173, at *1–2 (S.D.N.Y. Feb. 5, 1993) (recognizing that tax purposes are a legitimate business reason capable of supporting the conclusion that a reincorporation is not collusive).

Following the well-established precedents in this Circuit, the Court concludes that Plaintiffs' purported purpose of recognizing tax savings is a legitimate business reason for their conversion into corporations independent from invoking federal jurisdiction.  Indeed, Defendants do not dispute that recognizing tax savings is a legitimate business reason, but instead argue that there existed other means of reaping tax-savings advantages in the wake of the 2017 tax code overhaul.  (Dkt. No. 46 at 6.)  Nevertheless, Plaintiffs have the prerogative to decide for themselves how best to achieve tax efficiency.  The Court does not second-guess their business judgment as long as their purported justifications are *legitimate*.  In addition, Plaintiffs' reason for choosing Nevada as the site of their reincorporation—maintaining the investor protection of a charging order—also appears to be legitimate in light of the alleged threats made by Fields.  And Defendants do not deny having made such threats, nor do they dispute that maintaining investor protection is a legitimate business reason for conversion.

Plaintiffs have advanced legitimate business reasons for their conversions from Delaware

LLCs to Nevada corporations that are independent from invoking federal jurisdiction.

Accordingly, their conversions are not collusive or improper under § 1359 and will be respected

by the Court.  And given that the Court will give effect to Plaintiffs' reorganization in Nevada,

the parties were completely diverse at the time this action was filed, and the Court therefore has

diversity jurisdiction over this action.  Defendants' motion to dismiss for lack of subject-matter

jurisdiction is therefore denied.

### B.    Motion for Summary Judgment

Plaintiffs move for summary judgment on the grounds that no genuine dispute exists

regarding Defendants' liability under the Agreements.  (Dkt. No. 22 at 4–8.)

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2)

adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer &*

*Mandell LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).  Here, Defendants do not

dispute that Plaintiffs have satisfied all of the elements of their breach of contract claims under

New York law.  (*See generally* Dkt. No. 41; Dkt. No. 40 ¶ 2.)  Instead, Defendants advance two

arguments that go to the question of the *amount* of their liability under the Agreements.  The

Court addresses each argument in turn.

First, Defendants contend that Plaintiffs may already have received payment of some of

the sums due them under the Agreements.  (Dkt. No. 41 at 4–5.)  According to Defendants, after

they acknowledged the amounts owed to Plaintiffs in the 2016 Agreement, they entered into

various financing arrangements with a creditor group that includes Plaintiffs.  (Dkt. No. 40 ¶ 2.)

Subsequent to executing these financing arrangements, Defendants allegedly made various

payments, totaling over $37 million, to the creditor group.  (Dkt. No. 40 ¶ 3.)  Defendants argue

that because the creditor group never provided them with an accounting of the payments, they

8

have no way of knowing whether parts of the payments have been used to satisfy the amounts they owe Plaintiffs.  (Dkt. No. 41 at 4–5; Dkt. No. 40 ¶¶ 3–4.)

Plaintiffs respond that those payments were made to different creditors in satisfaction of claims unrelated to this action, and that they thus would not offset Defendants' liabilities here. (Dkt. No. 42 at 4–5.)  Moreover, Plaintiffs' president, Sagi Genger, has filed a declaration stating that "none of [the $37 million Defendants claim to have paid was] ever paid to either Syrup or Barn, either directly or through any other entity."  (Dkt. No. 43 ¶ 2.)

Viewing all the evidence in the light most favorable to Defendants, the Court cannot conclude that Plaintiffs are entitled to the full measure of the damages they seek.  Even though Genger has filed a declaration representing that Defendants' alleged payment did not satisfy the claims at issue, the Court cannot conclude on that basis alone that there could be no genuine dispute of material fact where Defendants have had no opportunity to obtain evidence that could rebut Genger's representation.  Indeed, the Court is ill-equipped to evaluate Defendants' affirmative defense without any evidence as to what payments were made, to whom the payments were made, and how the payments were allocated.  Because such information "is essential to [Defendants'] opposition to the motion for summary judgment," *Hellstrom*, 201 F.3d at 97 (internal quotation mark omitted), Defendants must be permitted to conduct discovery on this question.[2]

---

[2] The Court notes that Defendants have the burden of proof of establishing the elements of their affirmative defense of payment.  *See Weidenfeld v. Pac. Improvement Co.*, 43 F.2d 817, 820 (2d Cir. 1930).  But Defendants have not yet had any opportunity to conduct discovery to uncover evidence that would support their affirmative defense.  Because the evidence missing from the records is essential to Defendants' affirmative defense, Defendants must be afforded an opportunity to conduct discovery.

Defendants next argue that Plaintiffs are "double-dipping" because they seek to collect money Defendants agreed to pay to buy back certain CPRs but have not yet tendered back the CPRs to Defendants despite triggering Defendants' buyback obligation.  (Dkt. No. 41 at 2.) However, Defendants do not point to any provision in the Agreements that would require Plaintiffs to tender back the CPRs as a precondition of receiving payment.  Indeed, Defendants' obligation to pay was triggered as soon as Plaintiffs had issued notices that they were exercising their options in accordance with the Agreements.  (Dkt. No. 42 at 6; *see* Dkt. Nos. 21-1 at 2, 21-2 at 2.)

In conclusion, because Defendants do not dispute the fact of their liability under the Agreements, Plaintiffs are entitled to summary judgment as to Defendants' liability.  But the parties must be allowed to conduct discovery to ascertain the amount of damages.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is DENIED, and Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part.  The parties shall file a joint letter outlining a proposed discovery schedule on the assessment of damages on or before June 5, 2019.

The Clerk of Court is directed to close the motions at Docket Numbers 12, 20, and 35.

SO ORDERED.

Dated: May 15, 2019
New York, New York

J. PAUL OETKEN
United States District Judge